532 So.2d 1051 (1988)
Wilbur Aaron LAMB, Appellant,
v.
STATE of Florida, Appellee.
No. 70369.
Supreme Court of Florida.
September 1, 1988.
Rehearing Denied November 23, 1988.
*1052 James B. Gibson, Public Defender and Michael S. Becker, Asst. Public Defender, Seventh Judicial Circuit, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen. and W. Brian Bayly, Asst. Atty. Gen., Daytona Beach, for appellee.
SHAW, Justice.
We have for review Wilbur Aaron Lamb's convictions for first-degree murder, burglary with assault, and grand theft. The court sentenced Lamb to death for the murder. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm Lamb's convictions, but remand for resentencing.
Karl Ebernez was murdered and his home burglarized in January 1986. The cause of death was numerous blows to the head, resulting in depressed skull fractures and hemorrhaging. Seventeen-year-old Lamb was indicted and a jury returned guilty verdicts for first-degree premeditated murder, felony murder, burglary with assault, and grand theft. The court imposed the jury's recommended sentence of death for the first-degree murder, forty years imprisonment for the burglary, and five years imprisonment for the grand theft. The court entered no adjudication on the felony-murder guilty verdict.
Lamb challenges his first-degree murder conviction, arguing that he was unconstitutionally indicted and found guilty of both first-degree premeditated and felony murder stemming from a single death. The jury's verdict that he was guilty of both is supported by the evidence, and there is no reason why a defendant cannot premeditate a murder committed during the course of a felony. The trial court correctly adjudicated him guilty of only one murder (premeditated). Lamb also argues that the court improperly admitted statements and evidence given shortly after arrest and that the court committed numerous errors at trial which cumulatively require a new trial. We find these arguments meritless. Having reviewed the record, briefs, and arguments, we affirm Lamb's convictions.
In aggravation, the court found that: (1) Lamb was previously convicted of a violent felony based on his contemporaneous conviction for burglary with assault; (2) the murder was heinous, atrocious, and cruel; (3) the murder was cold, calculated and premeditated; and (4) the murder was committed during a burglary. The court found that the codefendant's plea-bargained seventeen-year prison sentence was a mitigating factor, but that the aggravating factors outweighed those in mitigation. A death sentence was imposed in keeping with the jury's recommended sentence.
Lamb challenges the sentence, arguing that his contemporaneous conviction for burglary with assault does not support a finding that he has been previously convicted of a violent felony. We agree. We *1053 recently held in Perry v. State, 522 So.2d 817, 820 (Fla. 1988), that it is "improper to aggravate for a prior conviction of a violent felony when the underlying felony is part of the single criminal episode against the single victim of the murder for which the defendant is being sentenced." See also Patterson v. State, 513 So.2d 1257 (Fla. 1987); Wasko v. State, 505 So.2d 1314 (Fla. 1987).
Lamb next argues that the murder was not cold, calculated, and premeditated. The evidence, however, shows that Lamb planned the burglary and theft; that he planned violence to the victim in perpetrating the theft; that he brought a weapon to the scene, and once there, exchanged it for one better suited for the crime; and that, after searching the victim's home and committing the felony, he concealed himself and waited for the victim to return because of his pique at the frugal results of the burglary. Further, there was evidence that, after leaving the scene, Lamb's companion suggested that they call an ambulance for the victim. Lamb rejected the idea, reasoning that their voices might be recorded and traced. This evidence supports the court's finding of the heightened premeditation required for application of this aggravating factor. See, e.g., Huff v. State, 495 So.2d 145 (Fla. 1986) (defendant brought murder weapon to the scene of the crime); Davis v. State, 461 So.2d 67 (Fla. 1984) (defendant brought murder weapon to the scene of the crime), cert. denied, 473 U.S. 913, 105 S.Ct. 3540, 87 L.Ed.2d 663 (1985). See also Eutzy v. State, 458 So.2d 755 (Fla. 1984) (weapon procured in advance), cert. denied, 471 U.S. 1045, 105 S.Ct. 2062, 85 L.Ed.2d 336 (1985).
There is no question that the trial court correctly found in aggravation that the murder was committed during a burglary. Further, we affirm the finding that the murder was heinous, atrocious, and cruel. The victim had a defensive wound. He was struck six times in the head with a claw hammer. Even though Lamb delivered each blow with sufficient force to penetrate the skull, the victim did not die instantaneously. The evidence shows that he fell to his knees and then to the floor after Lamb pulled his feet out from under him. The victim moaned, rolling his head from side to side, until Lamb kicked him in the face. This evidence supports the court's finding that the murder was heinous, atrocious, and cruel. See, e.g., Roberts v. State, 510 So.2d 885 (Fla. 1987) (defensive wounds with blows to back of head support finding that the murder was heinous, atrocious, and cruel), cert. denied, ___ U.S. ___, 108 S.Ct. 1123, 99 L.Ed.2d 284 (1988); Wilson v. State, 493 So.2d 1019 (Fla. 1986) (defensive wounds and brutal beating with blows to head supports finding that murder was heinous, atrocious, and cruel); Thomas v. State, 456 So.2d 454 (Fla. 1984) (bludgeoned skull supports finding that murder was heinous, atrocious, and cruel); Heiney v. State, 447 So.2d 210 (Fla.) (seven claw hammer blows to victim's head and defensive wounds support finding that murder was heinous, atrocious, and cruel), cert. denied, 469 U.S. 920, 105 S.Ct. 303, 83 L.Ed.2d 237 (1984).
The trial court considered numerous mitigating factors but found only one, i.e., that Lamb's codefendant received a plea-bargained sentence of seventeen years. Lamb claims that the court erred in failing to also find his age (seventeen years and ten months) as a mitigating factor. Lamb introduced evidence which, in conjunction with his age, arguably supports his claim that he was not functioning as an adult. This information included evidence that he had drug and emotional problems, ignored his school work and eventually quit school, and lived with his parents until approximately six weeks prior to the murder. The trial court discounted this evidence, stating in its sentencing order:
There is nothing to indicate that the age of the defendant affected his mental or emotional maturity or affected his ability to take responsibility for his own acts or to appreciate the consequences flowing from them.
The evidence showed him to be mature for his age. He visited with adult friends; he discussed adult topics; his *1054 opinions were valued; he was looked up to by his peers; he was a leader.
The Court does not find that the defendant's age is a mitigating factor in this case.
Lamb also introduced nonstatutory mitigating evidence that he would adjust well to prison life; that his family and friends feel he is a good prospect for rehabilitation; that before the offense he was friendly, helpful, and good with children and animals; that he had seen a psychologist and a psychiatrist concerning drug abuse and emotional problems; and that he had consumed alcohol and smoked cannabis in the hours preceding the capital felony. The trial court concluded that the record did not support the notion that his behavior was affected by alcohol or drugs. In considering the other factors, the court concluded that none rose "to the level of a mitigating circumstance to be weighed in the penalty decision." This statement gives us pause. We have previously recognized the semantic ambiguities which result from reviewing and considering any and all nonstatutory mitigating evidence. Echols v. State, 484 So.2d 568, 576 (Fla. 1985), cert. denied, 479 U.S. 871, 107 S.Ct. 241, 93 L.Ed.2d 166 (1986). More recently, we stated:
There appears to be some confusion over the concept of mitigation as set forth in our death penalty statute, which requires "specific written findings of fact based upon [aggravating and mitigating] circumstances ... and upon the records of the trial and the sentencing proceedings." § 921.141(3), Fla. Stat. (1985). However, a "finding" that no mitigating factors exist has been construed in several different ways: (1) that the evidence urged in mitigation was not factually supported by the record; (2) that the facts, even if established in the record, had no mitigating value; or (3) that the facts, although supported by the record and also having mitigating value, were deemed insufficient to outweigh the aggravating factors involved.
Rogers v. State, 511 So.2d 526, 534 (Fla. 1987), cert. denied, ___ U.S. ___, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). Mindful of the admonition that a trial court could not refuse to consider any relevant mitigating evidence, we found that
the trial court's first task in reaching its conclusions is to consider whether the facts alleged in mitigation are supported by the evidence. After the factual finding has been made, the court then must determine whether the established facts are of a kind capable of mitigating the defendant's punishment, i.e., factors that, in fairness or in the totality of the defendant's life or character may be considered as extenuating or reducing the degree of moral culpability for the crime committed. If such factors exist in the record at the time of sentencing, the sentencer must determine whether they are of sufficient weight to counterbalance the aggravating factors.
Id. Under the circumstances here, and mindful that we have rejected one aggravating factor on which the court relied, we are not certain whether the trial court properly considered all the mitigating evidence or whether it found that the aggravation outweighed the mitigation. Accordingly, we reverse the death sentence and remand for reconsideration of the death sentence and resubmission of a new sentencing order, if appropriate. A new penalty phase is not necessary.
Lamb also requests resentencing on his burglary and grand theft convictions, claiming that the trial court did not use a guidelines scoresheet in determining the appropriate sentences and, therefore, did not comply with the sentencing guidelines. The sentencing guidelines mandate that
[o]ne guideline scoresheet shall be utilized for each defendant covering all offenses pending before the court for sentencing. The state attorney's office will prepare the scoresheets and present them to defense counsel for review as to accuracy in all cases unless the judge directs otherwise. The sentencing judge shall approve all scoresheets.
Fla.R.Crim.P. 3.701(d)(13). As the sentencing guidelines committee notes explain, "Ultimate responsibility for assuring that scoresheets are accurately prepared rests *1055 with the sentencing court." The scoresheet provides the recommended sentence. It is axiomatic that, without the scoresheet, it is impossible to tell whether the sentence imposed is illegal as an unauthorized departure. The court's error in failing to utilize the sentencing scoresheet in sentencing Lamb requires resentencing.
Accordingly, we affirm Lamb's convictions but vacate the sentences and remand to the trial court for resentencing consistent with this opinion.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, BARKETT, GRIMES and KOGAN, JJ., concur.