654 So.2d 112 (1995)
Charles Kenneth FOSTER, Appellant,
v.
STATE of Florida, Appellee.
No. 82335.
Supreme Court of Florida.
February 23, 1995.
Rehearing Denied May 11, 1995.
Richard H. Burr, NAACP Legal Defense and Educational Fund, Inc., New York City, and Steven L. Seliger, Quincy, for appellant.
Robert A. Butterworth, Atty. Gen., and Mark C. Menser and Curtis M. French, Asst. Attys. Gen., Tallahassee, for appellee.
*113 PER CURIAM.
Charles Kenneth Foster appeals his sentence of death following the trial court's issuance of a new sentencing order in accordance with this Court's directive in Foster v. State, 614 So.2d 455, 465 (Fla. 1992). We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution.
Charles Foster was convicted of Julian Lanier's murder and sentenced to death in 1975. Foster's conviction and sentence were affirmed by this Court on direct appeal in Foster v. State, 369 So.2d 928 (Fla.), cert. denied, 444 U.S. 885, 100 S.Ct. 178, 62 L.Ed.2d 116 (1979). The trial court denied Foster's first postconviction motion, and this Court affirmed. Foster v. State, 400 So.2d 1 (Fla. 1981). This Court also affirmed the trial court's denial of Foster's second postconviction motion. Foster v. State, 518 So.2d 901 (Fla. 1987), cert. denied, 487 U.S. 1240, 108 S.Ct. 2914, 101 L.Ed.2d 945 (1988).[1] However, this Court granted Foster's habeas petition and remanded for a new sentencing proceeding based on a Hitchcock error.[2]Id.
The resentencing jury recommended death by an eight-to-four vote and the trial court followed that recommendation. On remand for resentencing, Foster filed a third postconviction motion which the trial court summarily denied. This Court affirmed the denial of Foster's third postconviction motion. Foster v. State, 614 So.2d 455 (Fla. 1992), cert. denied, ___ U.S. ___, 114 S.Ct. 398, 126 L.Ed.2d 346 (1993). However, on direct appeal of resentencing, this Court vacated Foster's death sentence and remanded the case for the trial court to enter a new sentencing order consistent with Rogers[3] and Campbell.[4]Id. at 465.
A new order was entered which reimposed the sentence of death. The trial court found fourteen nonstatutory mitigators to which it afforded little weight,[5] and three aggravators which it described as follows:
1. The crime for which the defendant is to be sentenced was committed while he was engaged in the commission of or attempt to commit, the crime of robbery.
2. The crime for which the defendant is to be sentenced was especially heinous, atrocious or cruel. The circumstances of this killing indicate a consciousless [sic] and pitiless regard for the victim's life and was unnecessarily tortuous [sic] to the victim, Julian Franklin Lanier. The victim did not die an instantaneous type of death. The victim was severely beaten prior to death. His nose was fractured, his face was severely bruised and his eyes were swollen shut from edema from hemorrhage and swelling resulting from the beating. After beating the victim, the defendant took out a knife and told the victim "I'm going to kill you; I'm going to kill you." *114 There is evidence that one of the girls present asked the defendant not to do it. The defendant then proceeded to stab the victim in the throat. There is evidence of a defensive wound to the victim's hand which indicates the victim attempted to fend off the knife as the defendant stabbed him in the throat.
After stabbing the victim in the throat, the defendant grabbed the victim by his testicles, or genitals, in order to move the victim outside. The victim groaned or moaned and the defendant stabbed the victim in the throat a second time. This second wound cut the victim's internal and external jugular veins. The victim could have lived from 20 to 30 minutes after this wound was inflicted.
Neither of these wounds to the neck severed the victim's vocal cords. There is evidence that the victim asked the defendant not to do it again before he was stabbed the second time.
After the second stab wound, the victim was dragged into the woods where he was covered with bushes. The marks on the victim's body indicated to the medical examiner, that the victim was either alive or dead a very short time before he was being dragged. It is consistent with what happened next to assume the victim was alive.
After the victim was covered in the woods, one of the girls accompanying the defendant reported to the defendant she could hear the victim breathing. The defendant then went back to the victim, who was lying face down, uncovered him and cut the victim's spine with a knife. As described by one witness, there was no air coming from the body of the victim after she heard "the cracking" of the spine. The medical examiner indicated the victim could have lived 3 to 5 minutes after his spinal cord was severed.
3. The capital felony for which the defendant is to be sentenced was a homicide and was committed in a cold, calculated and premeditated manner without any pretense of any moral or legal justification. In addition to the facts set forth in paragraph 2 above, the defendant, prior to beginning to beat the victim, had switched his personal ring with a "K" on it with one of the girls' rings in order not to leave the "K" impression on the victim's skin. One of the girls testified that the defendant had told her he planned to rob the victim before the beating began. Finally, when the defendant was testifying in the original trial he made the following statement:
"I reckon I'll just cop out. I have done it, killed him deader than hell. I ain't going to set up here, I am under oath and I ain't going to tell no fucking lies. I will ask the Court to excuse my language. I am the one that done it. They didn't have a damn thing to do with it. It was premeditated and I intended to kill him. I would have killed him if he hadn't had no money and I know I never told you about it but I killed him. (emphasis supplied) ["]
The facts of this case, together with the defendant's in court statement, are sufficient to establish the heightened degree of premeditation required for this aggravating factor to apply.
Foster raises three claims in this appeal: 1) the death penalty is not proportionately warranted in this case; 2) the trial court erred in concluding that a conflict existed regarding expert opinion relating to the mental health mitigators; and 3) the trial court's cold, calculated, and premeditated (CCP) aggravator instruction was constitutionally impaired and the giving of that instruction cannot be deemed harmless error.
Having compared this case to other decisions of this Court, we conclude that death is proportionate here and therefore reject Foster's first claim. As to Foster's second claim, we simply note that this Court has repeatedly recognized that it is within the purview of the trial court to determine whether a particular mitigating circumstance was proven and the weight to be given it. See, e.g., Daugherty v. State, 419 So.2d 1067, 1070 (Fla. 1982), cert. denied, 459 U.S. 1228, 103 S.Ct. 1236, 75 L.Ed.2d 469 (1983). We find that the trial court's conclusions regarding the mental health mitigators are supported by the record and therefore reject Foster's second claim. While we also reject *115 Foster's third claim, it does warrant discussion.
At resentencing, the trial court gave the following CCP aggravator instruction:
[T]he crime for which the defendant is to be sentenced was committed in a cold, calculated and premeditated manner without any pretense of moral or legal justification.
I further instruct you that the defendant's conviction for first degree, premeditated murder is insufficient in and of itself to require a finding that the homicide was cold, calculated and premeditated for the purposes of this aggravating circumstance.
The trial court denied defense counsel's request for a more expansive instruction on the CCP aggravator.
The first half of the instruction given in this case mirrors the standard CCP instruction which this Court held to be invalid in Jackson v. State, 648 So.2d 85 (Fla. 1994).[6] The second paragraph of the instruction given in this case was a step in the right direction, but did not cure the constitutional infirmity which this Court identified in Jackson. Stated otherwise, the CCP instruction given in this case does not adequately explain the difference between the premeditation required to convict for first-degree murder and the heightened premeditation required to find the CCP aggravator.
Having concluded that the CCP instruction given in this case was constitutionally impaired, we must determine whether the giving of that instruction was harmless error. Jackson explains that in order for the giving of an erroneous CCP instruction to be harmless, the State must establish "beyond a reasonable doubt that the invalid CCP instruction did not affect the jury's consideration or that its recommendation would have been the same if the requested expanded instruction had been given." Jackson, 648 So.2d at 90.
This Court previously concluded that there is competent, substantial evidence in the record to support the trial court's finding that Lanier's murder was cold, calculated, and premeditated. Foster, 614 So.2d at 461. We have again reviewed the record, including "new evidence" presented at resentencing, and we remain convinced that Lanier's murder could only have been cold, calculated, and premeditated. We find it particularly telling that after having concealed Lanier's body with bushes, Foster then proceeded to cut Lanier's spine with a knife when he realized that Lanier was still breathing. The fact that Foster had ample time to reflect on his actions and their attendant consequences, after concealing Lanier's body and before cutting Lanier's spine, is compelling evidence of the heightened level of premeditation required to establish the cold, calculated, and premeditated aggravator. See, e.g., Swafford v. State, 533 So.2d 270, 277 (Fla. 1988), cert. denied, 489 U.S. 1100, 109 S.Ct. 1578, 103 L.Ed.2d 944 (1989); Jackson v. State, 522 So.2d 802 (Fla.), cert. denied, 488 U.S. 871, 109 S.Ct. 183, 102 L.Ed.2d 153 (1988). In view of the fact that the trial court found no statutory mitigators and three strong aggravators, we also find, beyond a reasonable doubt, that the invalid CCP instruction did not affect the jury's consideration and that its recommendation would have been the same if the requested expanded instruction had been given. Hence, we conclude that the giving of the erroneous CCP instruction in this case was harmless error.
Accordingly, finding no error warranting reversal, we affirm Foster's sentence of death.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] In addition, the Eleventh Circuit affirmed the denial of Foster's two federal habeas petitions. Foster v. Dugger, 823 F.2d 402 (11th Cir.1987), cert. denied, 487 U.S. 1241, 108 S.Ct. 2915, 101 L.Ed.2d 946 (1988); Foster v. Strickland, 707 F.2d 1339 (11th Cir.1983), cert. denied, 466 U.S. 993, 104 S.Ct. 2375, 80 L.Ed.2d 847 (1984).
[2] Hitchcock v. Dugger, 481 U.S. 393, 398-99, 107 S.Ct. 1821, 1824, 95 L.Ed.2d 347 (1987) (concluding that an advisory jury must be instructed to consider, and a sentencing judge must consider, nonstatutory as well as statutory mitigating circumstances).
[3] Rogers v. State, 511 So.2d 526, 534 (Fla. 1987) (discussing the manner in which a trial court should consider mitigating circumstances in a case in which the State seeks the death penalty), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988).
[4] Campbell v. State, 571 So.2d 415, 419 (Fla. 1990) (recognizing that "the sentencing court must expressly evaluate in its written order each mitigating circumstance proposed by the defendant to determine whether it is supported by the evidence and whether, in the case of nonstatutory factors, it is truly of a mitigating nature").
[5] 1) Foster murdered Lanier while he was under the influence of emotional or mental disturbance  not extreme emotional or mental disturbance; 2) Foster's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirement of the law was impaired  not substantially impaired; 3) Foster has an abusive family background; 4) Foster's poverty; 5) Foster's physical illnesses; 6) Foster's love for, and love by, his family; 7) Foster's alcohol and/or drug addiction; 8) Foster's troubled personal life; 9) Foster's physical injuries; 10) Foster's lack of childhood development; 11) Foster's struggle with the death of loved ones; 12) Foster's learning disabilities; 13) Foster's potential for positive sustained human relationships; and 14) Foster's remorse for the crime.
[6] Because Foster's sentence is not yet final, Jackson is controlling.