700 So.2d 363 (1997)
Chadwick D. BANKS, Appellant/Cross-Appellee,
v.
STATE of Florida, Appellee/Cross-Appellant.
No. 83774.
Supreme Court of Florida.
August 28, 1997.
Rehearing Denied October 14, 1997.
*364 Nancy Daniels, Public Defender, Second Judicial Circuit, Tallahassee; and Teresa J. Sopp, Special Public Defender, Jacksonville, for Appellant/Cross-Appellee.
Robert A. Butterworth, Attorney General and Curtis M. French, Assistant Attorney General, Tallahassee, for Appellee/Cross-Appellant.
PER CURIAM.
We have on appeal the sentence of the trial court imposing the death penalty upon Chadwick Banks. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
Appellant Banks pled no contest to two counts of first-degree murder for the shooting deaths of his wife Cassandra Banks and her daughter (his stepdaughter) Melody Cooper. He also pled no contest to sexual battery on a child under the age of twelve for *365 acts committed against Melody Cooper. His appeal relates solely to the penalty phase for the murder of Melody Cooper.[1]
The facts are as follows. Appellant entered Cassandra Banks' trailer with a gun at approximately 2:50 a.m. on September 24, 1992. He shot Cassandra Banks in the head while she was asleep. Ms. Banks died without ever gaining consciousness. Appellant then went to Melody Cooper's bedroom at the other end of the trailer. He set the gun down and sexually battered her for approximately twenty minutes before shooting her in the top of the head, killing her.
The jury recommended death by a vote of nine to three. The trial court sentenced appellant to death after finding that each of the aggravators far outweighed all of the mitigating circumstances. The trial court found that the following aggravators had been established beyond a reasonable doubt:
(1) the defendant was previously convicted of another capital felony or a felony involving the use or threat of violence to the person; (2) the capital felony was committed while the defendant was engaged in the commission of a felony; and (3) the capital felony was especially heinous, atrocious, or cruel.
In statutory mitigation, the court found the appellant's age, but gave this factor little weight in light of his maturity and intelligence.[2] In nonstatutory mitigation, the court found that appellant's service in the military, employment history, good character, and contribution to his community and family had been established. However, the court gave little weight to these factors, reasoning that they were "no more than society expects from the average individual." The court also found the appellant's potential for rehabilitation, cooperation with the police, and his love and support of his family. However, none of these was given great weight. The court noted that appellant initially denied involvement with the murders and cooperated with police only after being told of an eyewitness. The trial court rejected appellant's religious activities as a nonstatutory mitigator and found insufficient evidence to establish that the killing occurred while he was under the influence of alcohol.
Appellant raises five issues on appeal.[3] In his first issue, he claims that the trial court erred in giving a jury instruction on the cold, calculated, and premeditated (CCP) factor, arguing that the evidence presented was insufficient to warrant the giving of an instruction. Although the trial court ultimately found this aggravator had not been proved beyond a reasonable doubt, there was competent and credible evidence presented to support this aggravator. Hunter v. State, 660 So.2d 244, 252 (Fla.1995), cert. denied, ___ U.S. ___, 116 S.Ct. 946, 133 L.Ed.2d 871 (1996). Thus it was not error to give an instruction for the CCP aggravator. The second part of appellant's argument attacks the particular CCP instruction given to the jury under Jackson v. State, 648 So.2d 85 (Fla.1994). This issue was properly preserved for review. Defense counsel objected to the State's proposed instruction and requested an expanded instruction, which the trial court rejected. The trial court instead instructed the jury as follows:
The crime for which the defendant is to be sentenced was committed in a cold, calculated, and premeditated manner, without any pretense of moral or legal justification.

*366 Premeditation, within the meaning of the first degree murder law, requires proof that the homicide was committed after consciously deciding to do so. The decision must be present in the mind of the defendant at the time of the killing. The law does not fix the exact period of time that must pass before the formation of the premeditated intent to kill and the killing. The period of time must be long enough to allow reflection by the defendant. The premeditated intent to kill must be formed before the killing.
In Jackson we reiterated that the CCP aggravator requires a higher degree of premeditation than what is required to establish the premeditation element of first-degree murder. Id. at 88. We held that a trial court's instruction must inform the jury of this heightened degree of premeditation lest they mistakenly conclude that all premeditated murders qualify for the CCP aggravator. Id. at 89. For the same reason, we also clarified that the trial court's instruction must explain the meaning of the terms "cold" and "calculated." Id. Without an adequate explanation of these terms, the jury was left without sufficient guidance for determining the aggravator's presence or absence, thus rendering the instruction unconstitutionally vague.
In this case, the trial court's CCP instruction suffers from the same infirmities as the instruction in Jackson. The instruction was vague because it did not explain the terms "cold" and "calculated." Further, the definition of "premeditated" did not adequately explain the heightened premeditation necessary to establish this aggravator.
Although the trial court ultimately found that the CCP aggravator had not been established beyond a reasonable doubt, we are still required to consider whether the error was harmless because the jury was given an erroneous instruction on this aggravator. Kearse v. State, 662 So.2d 677 (Fla. 1995).[4] Thus the State must establish beyond a reasonable doubt that the invalid CCP instruction did not affect the jury's consideration or that its recommendation would have been the same if the requested instruction had been given. The fact that the trial judge did not determine the existence of CCP does not preclude a finding of harmless error. In this case, there was substantial evidence tending to support CCP. In the early morning hours, Banks sat outside the trailer for several minutes before entering. He then shot his wife as she lay sleeping. He had to realize that when he shot his wife, her daughter, who also lived in the trailer, would identify him unless he also killed her. Upon killing his wife, Banks then went to the daughter's room, but before shooting the ten-year-old girl, he brutally raped her for twenty minutes. Further, there were three other valid aggravating circumstances and little in the way of significant mitigation. The prior violent felony aggravator was particularly weighty because in addition to the contemporaneous murder of his wife, he was also convicted of two aggravated assaults which had occurred a year before. In view of all of the evidence, we conclude that the error was harmless.
Second, appellant argues that the trial court erred in finding that the murder was heinous, atrocious, or cruel (HAC). We find no error. Even where the victim's death may have been almost instantaneous (as by gunshot), we have upheld this aggravator in cases where the defendant committed a sexual battery against the victim preceding the killing, causing fear and emotional strain in the victim. E.g., Swafford v. State, 533 So.2d 270, 277 (Fla.1988); Lightbourne v. State, 438 So.2d 380, 391 (Fla.1983). For purposes of this aggravator, a common-sense inference as to the victim's mental state may be inferred from the circumstances. Swafford, 533 So.2d at 277. The evidence in this case established that the ten-year-old victim was sexually battered for approximately twenty minutes before appellant finally shot her. The medical examiner testified that the girl's *367 anus was dilated and its lining torn as the result of penetration. In addition, appellant's blood was found under her fingernails. Undoubtedly, the young victim suffered greatly, both physically and emotionally. We find no error.
As his third issue, appellant claims that the trial court engaged in impermissible doubling of aggravators by finding that the murder was both heinous, atrocious, or cruel and committed during the commission of a felony listed in section 921.141(5)(d), Florida Statutes (1991).[5] He argues that because the trial court's sentencing order refers to the sexual battery as the basis for both aggravators, these two factors should have been merged into one. We do not agree.
Improper doubling occurs when both aggravators rely on the same essential feature or aspect of the crime. Provence v. State, 337 So.2d 783, 786 (Fla.1976). However, there is no reason why the facts in a given case may not support multiple aggravating factors so long as they are separate and distinct aggravators and not merely restatements of each other, as in murder committed during a burglary or robbery and murder for pecuniary gain, or murder committed to avoid arrest and murder committed to hinder law enforcement. Echols v. State, 484 So.2d 568, 575 (Fla.1985); see, e.g., Davis v. State, 604 So.2d 794, 798 (Fla.1992) (improper doubling where murder was found to be both committed during the course of a burglary and for pecuniary gain where purpose of burglary was pecuniary gain). The two aggravators at issue here are not merely restatements of one another. While section 921.141(5)(d) focuses simply on whether the defendant was engaged in the commission of one of the statute's enumerated felonies, the HAC aggravator focuses on a different aspect of the capital felonyits impact on the victim. As we stated in State v. Dixon, 283 So.2d 1, 9 (Fla.1973):
What is intended to be included [in the HAC aggravator] are those capital crimes where the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital feloniesthe conscienceless or pitiless crime which is unnecessarily torturous to the victim.

(Emphasis added.) See also Cheshire v. State, 568 So.2d 908, 912 (Fla.1990) ("The factor of heinous, atrocious or cruel is proper only in torturous murdersthose that evince extreme and outrageous depravity as exemplified either by the desire to inflict a high degree of pain or utter indifference to or enjoyment of the suffering of another."). Thus, the HAC aggravator considers the circumstances of the capital felony from the unique perspective of the victim, whereas section 921.141(5)(d) does not.[6] As previously noted, the victim suffered mental anguish and serious physical injury for twenty minutes before she was killed. We find no improper doubling.
Fourth, appellant contends that the trial court erred in instructing the jury that it could find the murder was committed during a sexual battery where it was also the underlying felony for purposes of establishing first-degree felony murder. He argues that the effect of this is the creation of an automatic aggravating circumstance for all felony-murder cases. We rejected this argument in Mills v. State, 476 So.2d 172, 178 (1985), wherein we concluded that the legislature had reasonably determined that a first-degree murder committed in the course of another dangerous felony was an aggravated capital felony.
*368 Appellant's final claim relates to the trial court's findings regarding nonstatutory mitigation. Specifically, he claims that the trial court erred in rejecting appellant's religious participation, in finding that there was insufficient evidence to establish that the killing occurred while appellant was under the influence of alcohol, and in assigning little weight to the remaining mitigating factors that appellant proved. It is within a trial court's discretion to decide whether a proposed mitigator has been established, and whether it is truly mitigating in nature. Johnson v. State, 608 So.2d 4, 11 (Fla.1992). In Ferrell v. State, 653 So.2d 367, 371 (Fla. 1995), we held that a mitigator is supported by the evidence if it is mitigating in nature and reasonably established by the greater weight of the evidence. If competent substantial evidence exists to support a trial court's rejection of proposed mitigation, that rejection will be upheld on appeal. Johnson, 608 So.2d at 12.
While voluntary intoxication or drug use might be a mitigator, whether it actually is depends upon the particular facts of a case. Id. at 13. We conclude that the trial court did not abuse its discretion in finding that there was insufficient evidence to establish that appellant was under the influence of alcohol. Testimony revealed that in the hours preceding the murders, appellant was present at a local bar, where he was served between five and seven sixteen-ounce servings of malt liquor over a period of approximately five or six hours. Notwithstanding his alcohol consumption, appellant won several pool games throughout the evening and displayed no visible signs of drunkenness such as slurred speech or stumbling. Also, the circumstances of the crimes themselves demonstrate that they were committed in a purposeful manner. Appellant drove to Cassandra Banks' trailer, entered without turning on the lights, shot Ms. Banks execution-style while she lay sleeping, and then proceeded to Melody Cooper's bedroom.
Thus, although he had ingested a considerable quantity of alcohol before the murders, appellant's actions both before and during the murders and the length of time over which the alcohol was consumed support the trial court's finding that there was insufficient evidence to establish that appellant was under the influence of alcohol when he assaulted and killed Melody Cooper. The trial court found that even if this nonstatutory mitigator had been established, it would be afforded only minimal weight. Thus, any possible error in finding that this mitigator was not established was harmless. See also Preston v. State, 607 So.2d 404, 412 (Fla. 1992) (upholding trial court's finding that defendant's drug and alcohol use did not even rise to the level of nonstatutory mitigating circumstance). We also find that the trial court did not abuse its discretion in rejecting appellant's religious activities as mitigating in nature.
Though not argued as a point on appeal, we find that the imposition of the death penalty in this case is proportional.
The sentence of the trial court imposing the death penalty on Chadwick D. Banks is affirmed.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, GRIMES, HARDING and WELLS, JJ., concur.
ANSTEAD, J., concurs in part and dissents in part with an opinion.
ANSTEAD, Justice, concurring in part and dissenting in part.
As the majority notes, the same constitutional error found in Jackson v. State, 648 So.2d 85 (Fla.1994), occurred here. The trial court did not have the benefit of our decision in Jackson at the time the jury was charged on March 18, 1994. Jackson was not decided until April 21, 1994, over a month later.
The entire instruction on the CCP aggravator as given by the trial court here was:
Four, the crime for which the defendant is to be sentenced was committed in a cold, calculated, and premeditated manner, without any pretense of moral or legal justification. Premeditation, within the meaning of the first degree murder law, requires proof that the homicide was committed after consciously deciding to do so.

*369 The decision must be present in the mind of the defendant at the time of the killing. The law does not fix the exact period of time that must pass before the formation of the premeditated intent to kill and the killing. The period of time must be long enough to allow reflection by the defendant. The premeditated intent to kill must be formed before the killing.
Of course, as the majority acknowledges, the instruction was patently erroneous, since in essence it permits a finding of the CCP aggravator in every premeditated murder case, without more than a finding of premeditation.
However, having found error, there is simply no way that we can square our holding here and our holding in Jackson, wherein we remanded for a new sentencing and explained:
As the Supreme Court explained in Sochor v. Florida, 504 U.S. 527, 537-39, 112 S.Ct. 2114, 2122, 119 L.Ed.2d 326 (1992), while a jury is likely to disregard an aggravating factor upon which it has been properly instructed but which is unsupported by the evidence, the jury is "unlikely to disregard a theory flawed in law." See also Griffin v. United States, 502 U.S. 46, 59, 112 S.Ct. 466, 474, 116 L.Ed.2d 371 (1991) ("When jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error.").
In Stringer v. Black, 503 U.S. 222, 232, 112 S.Ct. 1130, 1137, 117 L.Ed.2d 367 (1992), the Supreme Court addressed the role of the reviewing court when the sentencing body is told to weigh an invalid factor in its decision:
[A] reviewing court may not assume it would have made no difference if the thumb had been removed from death's side of the scale. When the weighing process itself has been skewed, only constitutional harmless-error analysis or reweighing at the trial or appellate level suffices to guarantee that the defendant received an individualized sentence.
In the instant case, the trial judge found two aggravating circumstances (victim was a law enforcement officer and CCP) and several nonstatutory mitigating circumstances. We do not fault the trial judge for giving the standard CCP instruction in this case. Hodges [v. Florida, 506 U.S. 803, 113 S.Ct. 33, 121 L.Ed.2d 6 (1992)] was not decided by the Supreme Court until October 5, 1992. The sentence here was imposed by the trial judge on February 21, 1992. Yet, we cannot say beyond a reasonable doubt that the invalid CCP instruction did not affect the jury's consideration or that its recommendation would have been the same if the requested expanded instruction had been given. Thus, we vacate Jackson's death sentence and remand to the trial court with directions to empanel a new jury, to hold a new sentencing proceeding, and to resentence Jackson. See James, 615 So.2d at 669.
Jackson v. State, 648 So.2d 85, 90 (Fla.1994). Furthermore, I find curious the majority's citation to Kearse v. State, 662 So.2d 677 (Fla.1995), for the proposition that even though the trial court did not find that CCP had been established beyond a reasonable doubt, "we are still required to consider whether the error was harmless because the jury was given an erroneous instruction on this aggravator." Majority op. at 366. The issue presented in Kearse is precisely the issue presented here, except the majority cites Kearse and then inexplicably disregards its essential reasoning and holding which mandates a reversal for a Jackson error.
In Kearse, as here, we found a properly preserved Jackson error and reversed.[7] On harmless error, this Court stated:
The State contends that any error in failing to give the requested instruction to the jury would necessarily be harmless because the trial court did not find CCP after an independent examination of the evidence. We do not agree. The fact that the court correctly determined that the murder was not CCP does not change the fact that the jury instruction was unconstitutionally vague. As the United States Supreme Court noted in Espinosa v. Florida [ 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992)], `if a weighing State *370 decides to place capital-sentencing authority in two actors rather than one, neither actor must be permitted to weigh invalid aggravating circumstances.' While a jury is likely to disregard an aggravating factor upon which it has been properly instructed but which is unsupported by the evidence, the jury is `unlikely to disregard a theory flawed in law.' Sochor v. Florida; Jackson, 648 So.2d at 90.
Kearse, 662 So.2d at 686 (citations omitted). Hence, the majority opinion is not only irreconcilable with Jackson, but especially with its progeny Kearse, as well.
The error in giving the unconstitutional CCP instruction is "aggravated" here by the finding of the trial court and this Court that this aggravator does not exist in this case. Further, despite the egregious circumstances of this killing, and even with an unconstitutional instruction that virtually directed them to find an aggravator that did not exist, three jurors voted to recommend life imprisonment instead of death. As in Jackson and Kearse, we cannot say with any confidence at all that the jury did not consider this improperly defined aggravator in determining its recommendation. To the contrary, it is logical to assume that the jury did consider this aggravator in view of the way it was defined in the instruction. Once again, we are failing to honor the harmless error test set out in State v. DiGuilio, 491 So.2d 1129 (Fla.1986), requiring a determination beyond a reasonable doubt that this erroneous instruction played no role in the jury's recommendation. We surely can make no such determination here.
NOTES
[1] Appellant received a sentence of life with a minimum mandatory of 25 years for the murder of Cassandra Banks and a sentence of life without possibility of parole for 25 years for the sexual battery charge against Melody Cooper.
[2] Appellant was 21 at the time of the murder.
[3] Appellant also claimed in his brief that the trial court erred in instructing the jury that it could consider his prior crimes of aggravated assault for purposes of the prior violent felony aggravator. The basis for his claim was that adjudication of guilt for these earlier crimes had been withheld and was not entered until after the instant murder had been committed. The trial court ultimately agreed with this argument. The State cross-appealed the trial court's ultimate finding that these two aggravated assault convictions could not satisfy the prior violent felony aggravator. Appellant has now conceded this issue and rightfully so. See King v. State, 390 So.2d 315, 320 (Fla.1980) (holding that the prior violent felony aggravator requires only that there be a conviction at the time of sentencing). However, the trial court found this aggravator based on the murder of Cassandra Banks, so the existence of the prior violent felony aggravator remains valid.
[4] Contrary to the implication in the dissenting opinion, Kearse does not hold that the failure to give a proper CCP instruction cannot be harmless error. In fact, we have employed a harmless error analysis in several cases in which an erroneous CCP instruction had been given. E.g., Jones v. State, 690 So.2d 568 (Fla.1996); Foster v. State, 654 So.2d 112 (Fla.1995); Fennie v. State, 648 So.2d 95 (Fla.1994).
[5] This aggravating circumstance is established if:

The capital felony was committed while the defendant was engaged, or was an accomplice, in the commission of, or an attempt to commit, or flight after committing or attempting to commit, any robbery, sexual battery, arson, burglary, kidnapping, or aircraft piracy or the unlawful throwing, placing, or discharging of a destructive device or bomb.
§ 921.141(5)(d), Fla. Stat. (1991).
[6] To illustrate how these two aggravators focus on different aspects of the crime, we note that if Melody Cooper had been unconscious during the sexual battery, it could not support the HAC aggravator. See Herzog v. State, 439 So.2d 1372, 1380 (Fla.1983) (where victim was unconscious, acts of defendant prior to victim's death could not support a finding of heinousness). Yet her unconsciousness would have no effect on whether the murder had been committed during commission of a felony.
[7] The jury in Kearse recommended the death penalty by a vote of 11 to 1. 662 So.2d at 680.