810 So.2d 910 (2002)
Charles Kenneth FOSTER, Appellant,
v.
STATE of Florida, Appellee.
Charles Kenneth Foster, Petitioner,
v.
Michael W. Moore, etc., et al., Respondents.
Nos. SC01-240, SC01-767.
Supreme Court of Florida.
February 14, 2002.
*912 Joseph F. McDermott, St. Pete Beach, FL, for Appellant/Petitioner.
Robert A. Butterworth, Attorney General, and Charmaine M. Millsaps, Assistant Attorney General, Tallahassee, FL, for Appellee/Respondent.
PER CURIAM.
Charles Kenneth Foster, a prisoner under the sentence of death, appeals an order entered by the trial court denying his postconviction motion filed pursuant to Florida Rule of Criminal Procedure 3.850. Foster also petitions this Court for writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. These cases have been consolidated. We affirm the trial court's denial of postconviction relief, and we deny habeas relief.

PROCEEDINGS TO DATE
The prior proceedings in this case have been extensive, both in the trial court and on appeal. The facts are set out in detail in Foster v. State, 369 So.2d 928 (Fla.1979). Foster was convicted of the first-degree murder and robbery of Julian Lanier, and, after the jury recommended death, the trial court sentenced him to death. See id. at 931. Foster's conviction and sentence were affirmed by this Court. See id. at 932.
This Court subsequently affirmed the trial court's denial of Foster's first postconviction motion, see Foster v. State, 400 So.2d 1 (Fla.1981), and also affirmed the trial court's denial of Foster's second postconviction motion. See Foster v. State, 518 So.2d 901 (Fla.1987). However, this Court granted Foster's habeas petition and remanded for a new sentencing proceeding based on a Hitchcock[1] error. See id. at 902. Foster's resentencing jury recommended death by an eight-to-four vote *913 and the trial court imposed a death sentence. See Foster v. State, 614 So.2d 455, 458 (Fla.1992). In addition, pending resentencing, Foster filed a third postconviction motion, which the trial court summarily denied. See id. Upon review of the denial of postconviction relief and of resentencing, this Court affirmed the denial of Foster's third postconviction motion, but vacated Foster's death sentence and remanded the case for the trial court to enter a new sentencing order consistent with Rogers v. State, 511 So.2d 526 (Fla. 1987), and Campbell v. State, 571 So.2d 415 (Fla.1990). See Foster, 614 So.2d at 465.
Pursuant to our remand, the trial court entered a new sentencing order, reimposing the death sentence, and this Court subsequently affirmed the sentence. See Foster v. State, 654 So.2d 112, 113 (Fla. 1995). The trial court found three statutory aggravators: (1) the murder was committed while Foster was engaged in the commission of or attempt to commit robbery; (2) the crime was especially heinous, atrocious, or cruel; and (3) the murder was committed in a cold, calculated, and premeditated manner (CCP). See id. at 113-14. The trial court found fourteen nonstatutory mitigators: (1) Foster murdered Lanier while he was under the influence of emotional or mental disturbance (little weight); (2) Foster's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirement of the law was impaired (little weight); (3) Foster has an abusive family background (very little weight); (4) Foster's poverty (very little weight); (5) Foster's physical illnesses (very little weight); (6) Foster's love for, and love by, his family (very little weight); (7) Foster's alcohol and/or drug addiction (very little weight); (8) Foster's troubled personal life (very little weight); (9) Foster's physical injuries (very little weight); (10) Foster's lack of childhood development (very little weight); (11) Foster's struggle with the death of loved ones (very little weight); (12) Foster's learning disabilities; (13) Foster's potential for positive sustained human relationships (very little weight); and (14) Foster's remorse for the crime (very little weight). See id. at 113 n. 5.

THIS APPEAL AND PROCEEDING
On September 7, 1999, Foster filed his fourth 3.850 motion, which represents the first 3.850 motion filed after the trial court entered a new sentencing order pursuant to our remand citing Campbell.[2] A Huff[3] preliminary hearing on this motion was held on November 27, 2000. On December 29, 2000, the trial court summarily denied the motion on all grounds.[4] Foster *914 now appeals the trial court's summary denial of his fourth 3.850 motion, alleging that the trial court erred in denying him an evidentiary hearing, and he petitions this Court separately for a writ of habeas corpus.

3.850 APPEAL
Foster's claims on appeal from the summary denial of his 3.850 motion may be summarized as: (1) the trial court erred by denying without a hearing Foster's claim that his right to an impartial jury was violated; (2) the trial court erred by denying without a hearing Foster's claim that his conviction violated double jeopardy; (3) the trial court erred by denying without a hearing Foster's Brady claim; (4) the trial court erred by denying without a hearing Foster's claim that the twenty-three years that Foster has spent on death row constitute cruel and unusual punishment; and (5) the Florida Supreme Court engaged in a constitutionally flawed harmless error analysis in Foster v. State, 654 So.2d 112 (Fla.1995).
This Court has summarized the standard of review for summary denial of a 3.850 claim:
To uphold the trial court's summary denial of claims raised in a 3.850 motion, the claims must be either facially invalid or conclusively refuted by the record. Further, where no evidentiary hearing is held below, we must accept the defendant's factual allegations to the extent they are not refuted by the record.
Peede v. State, 748 So.2d 253, 257 (Fla. 1999) (citations omitted). However, this Court has also held the following:
A motion for postconviction relief can be denied without an evidentiary hearing when the motion and the record conclusively demonstrate that the movant is entitled to no relief. A defendant may not simply file a motion for postconviction relief containing conclusory allegations that his or her trial counsel was ineffective and then expect to receive an evidentiary hearing. The defendant must allege specific facts that, when considering the totality of the circumstances, are not conclusively rebutted by the record and that demonstrate a deficiency on the part of counsel which is detrimental to the defendant.
Kennedy v. State, 547 So.2d 912, 913 (Fla. 1989) (citations omitted).
We affirm the trial court's summary denial of Foster's 3.850 claims, as they each fall into one of three categories: procedurally barred, without merit, or conclusively refuted by the record.

RIGHT TO AN IMPARTIAL JURY
Foster claims the trial court erred by summarily denying the claim that his right to have an impartial jury was violated because a fair cross-section of the community was not available to serve on his jury due to the trial judge excusing a certain class of prospective jurors. Specifically, Foster alleges for the first time in this 3.850 motion that pregnant women and women with small children were automatically excused from the jury venire before voir dire began, pursuant to a flawed statutory exemption scheme. Foster bases this allegation on the fact that the State's jury notes, which allegedly were not previously available to him, do not affirmatively indicate that potential jurors were not excused. Foster states that if the trial court automatically excused this class of people, it did so improperly because the statute provided, "[E]xpectant mothers and mothers with children under *915 15 years of age, upon their request, shall be exempted from grand and petit jury duty." § 40.01(1), Fla. Stat. (1975) (emphasis added). Foster claims that he was entitled to an evidentiary hearing to explore whether or not jurors were improperly excused.
We find this claim is procedurally barred because Foster's challenge to the procedure in which jurors were excused was not properly preserved at the trial level.[5]See Hoskins v. State, 702 So.2d 202 (Fla.1997) (holding that the defendant's challenge to the trial court's practice of having the court clerk automatically excuse prospective jurors pursuant to section 40.013(5), Florida Statutes (1995), was not timely filed because the excusals had already been made and the defendant did not challenge his jury panel). We therefore affirm the trial court's summary denial of this claim.
Foster also advances an ineffective assistance of counsel argument on this claim. In his 3.850 motion, Foster contends that counsel was ineffective for failing to discover and litigate the exclusion of pregnant women and women with small children during voir dire.
In his 3.850 motion, Foster devoted only one sentence to the ineffective assistance of counsel claim, stating: "To the extent trial counsel failed to discover and litigate this issue, Defendant was denied effective assistance of counsel." Foster has simply failed to allege specific facts that, when considering the totality of the circumstances, demonstrate a deficiency on the part of counsel which resulted in prejudice to the defendant. Furthermore, Foster has not demonstrated that he was constitutionally entitled to have pregnant women and women with small children serve on his jury since section 40.01(1), Florida Statutes (1975), provided them with an excuse for service and this Court has upheld the statute in the face of constitutional concerns. See McArthur v. State, 351 So.2d 972, 975 (Fla.1977). Therefore, we find the trial court did not err by denying Foster an evidentiary hearing on this claim.

BRADY CLAIM
Foster alleges the trial court erred by not holding a hearing on his claim that the State withheld exculpatory evidence from him in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).[6] Specifically, Foster alleges the State did not disclose (until a public records request), a letter from jail physician Dr. Russell Stewart to Sheriff Tullis Easterling dated July 31, 1975, in which Dr. Stewart observed "obvious mental *916 disturbance" in Foster during an examination before trial. However, the record affirmatively and conclusively refutes Foster's claim that the letter was withheld by the State, either willfully or inadvertently, because the record reflects that defense counsel was in possession of this letter on June 6, 1990, during Foster's resentencing hearing. Defense counsel moved to have the letter entered into evidence and the court admitted it as defense exhibit number 4 during the penalty phase of Foster's resentencing hearing. We therefore affirm the trial court's summary denial of this claim because Foster's Brady claim is conclusively refuted by the record.

DOUBLE JEOPARDY VIOLATION
Foster alleges the trial court erred by summarily denying his claim that the jury's two murder verdicts, finding him guilty of separate counts of premeditated murder and felony murder for a single death, violate double jeopardy principles. We find the jury's dual verdict is supported by the evidence in this case, and, as we stated in Lamb v. State, 532 So.2d 1051, 1052 (Fla.1988), "there is no reason why a defendant cannot premeditate a murder committed during the course of a felony." We hereby affirm the trial court's summary denial of this claim because the record reflects that the trial court properly adjudicated Foster guilty of a single murder conviction for first-degree murder, which conclusively refutes Foster's double jeopardy claim. See id. Of course, Foster also received a single sentence for the murder.

CRUEL AND UNUSUAL PUNISHMENT
Foster argues the trial court erred when it summarily denied his claim that the twenty-three years he has spent on death row constitutes cruel and unusual punishment. We have previously held an extended stay on death row does not constitute cruel and unusual punishment. See Knight v. State, 746 So.2d 423, 437 (Fla. 1998). We also reject Foster's claim that the death penalty is per se cruel and unusual punishment, an issue that we have already decided adversely to him. See Davis v. State, 742 So.2d 233, 235-36 (Fla. 1999) (holding that the claim that the death penalty is basically cruel and unusual punishment is without merit). Therefore, we affirm the trial court's summary denial of this claim, as we find that it is without merit.

HARMLESS ERROR ANALYSIS
Foster alleges this Court engaged in a constitutionally flawed harmless error analysis regarding our conclusion in Foster v. State, 654 So.2d 112, 115 (Fla. 1995), in which we stated that because the trial court found no statutory mitigators and three strong aggravators, the giving of an erroneous cold, calculated, and premeditated aggravator instruction did not affect the jury's consideration of his sentence, and therefore the giving of such instruction was harmless error. A postconviction motion is not the proper vehicle to challenge a decision of this Court. Rule 3.850 motions are a vehicle provided to challenge collateral issues related to the trial court proceedings, not appellate decisions. See Fla. R.Crim. P. 3.850(a)(1)-(6). Further, this claim is procedurally barred because it is an improper relitigation of an issue upon which this Court has already ruled. See Brown v. State, 596 So.2d 1026, 1028 (Fla. 1992). We therefore affirm the trial court's summary denial of this claim.

HABEAS CORPUS
Foster alleges both appellate counsel and postconviction counsel were ineffective for not sufficiently arguing that the trial court erred when it stated that aggravators were established beyond a *917 reasonable doubt, without a specific factual analysis that a robbery was committed. The issue of appellate counsel's effectiveness is appropriately raised in a petition for writ of habeas corpus and we consider it here. See Freeman v. State, 761 So.2d 1055, 1069 (Fla.2000). However, this Court has held that ineffective assistance of postconviction counsel is not a cognizable claim. See Waterhouse v. State, 792 So.2d 1176, 1193 (Fla.2001) (citing State ex rel. Butterworth v. Kenny, 714 So.2d 404, 408 (Fla.1998), and Lambrix v. State, 698 So.2d 247, 248 (Fla.1996)).
Foster takes issue with his appellate counsel for not sufficiently arguing that the trial court erred when it found that the State had proven the aggravator that the murder was committed while Foster was engaged in the commission of a robbery. The record reflects that the robbery aggravator was asserted during the penalty phase, but only after evidence of a robbery had already been presented during the guilt phase and the jury found Foster guilty of the robbery that arose out of the same criminal episode as the murder. This Court has stated, "[A]ppellate counsel cannot be deemed ineffective for failing to raise non-meritorious claims on appeal, or claims that do not amount to fundamental error." Happ v. Moore, 784 So.2d 1091, 1095 (Fla.2001) (citation omitted). We find that appellate counsel was not deficient for failing to raise this issue in more depth because the argument had no merit.
Foster argues that his direction to another person to take a wallet from a dead body is merely evidence of an "afterthought," not evidence of robbery. This Court has stated:
Where an "afterthought" argument is raised, the defendant's theory is carefully analyzed in light of the entire circumstances of the incident. If there is competent, substantial evidence to uphold the robbery conviction, and no other motive for the murder appears from the record, the robbery conviction will be upheld. Conversely, in those cases where the record discloses that, in committing the murder, the defendant was apparently motivated by some reason other than a desire to obtain the stolen valuable, a conviction for robbery (or the robbery aggravator) will not be upheld.
Beasley v. State, 774 So.2d 649, 662 (Fla. 2000) (citations omitted) (holding that property being stolen after the victim was killed constituted a robbery because no evidence demonstrated any motive for killing the victim other than to take her money). See also Jones v. State, 652 So.2d 346 (Fla.1995); Bruno v. State, 574 So.2d 76 (Fla.1991). The record reflects that Anita Rogers, an eyewitness to the murder who was with Foster immediately before the murder, testified that Foster said he was going to "rip the old man off" by taking his money when the man went to bed with Gail Evans. This testimony rebuts Foster's "afterthought" argument and provides an evidentiary basis for Foster's robbery conviction. Therefore, because Foster has not shown that appellate counsel's failure to argue the robbery aggravator in more detail was of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance, and that this alleged deficiency compromised the appellate process to such a degree as to undermine confidence in the correctness of the result, the petition for writ of habeas corpus is denied.
Based on the foregoing, we affirm the trial court's denial of 3.850 relief and deny habeas corpus relief.
It is so ordered.
*918 WELLS, C.J., and SHAW, HARDING, ANSTEAD, PARIENTE, LEWIS, and QUINCE, JJ., concur.
NOTES
[1] Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987) (holding that it was error for the trial court to refuse to consider nonstatutory mitigating circumstances that were presented).
[2] The claims in Foster's amended 3.850 motion were: (A) the Florida Supreme Court applied constitutionally flawed harmless error analysis regarding the CCP aggravator; (B) Foster was denied the right to an impartial jury; (C) Foster's guilty verdict including both felony murder and premeditated murder amounted to double jeopardy and due process violations; (D) Foster's confinement on death row for twenty-three years constitutes cruel and unusual punishment; (E) the death penalty constitutes cruel and unusual punishment; and (F) a violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), was committed when the State did not disclose to the defense a jail physician's letter.
[3] Huff v. State, 622 So.2d 982 (Fla.1993).
[4] In addition to addressing the six main claims, the trial court briefly addressed twenty-nine claims that Foster included in his motion. Foster presented the claims as being previously preserved and often devoted little more than one sentence to each claim. The trial court stated, "[I]t is unclear if the Defendant is employing this method to incorporate those arguments or if he is merely outlining what was raised previously." In each of the twenty-nine claims, the trial court found that Foster failed to state a facially sufficient claim. Foster does not raise the issue of the trial court's ruling on any of those twenty-nine claims on appeal.
[5] Foster's argument that this claim may be brought as a newly discovered evidence claim is refuted by the fact that in his own 3.850 motion, he admits he knew that the judge conducted a voir dire outside his and counsel's presence. The initial prong for determining whether something constitutes "newly discovered evidence," involves the fact that it must have been unknown by the trial court, by the party, or by counsel at the time of trial and the defendant, or his counsel could not known of it through due diligence. See Jones v. State, 709 So.2d 512, 521 (Fla.1998). Foster knew of the ex parte meeting with the jury venire at the time of his trial; his counsel could have attempted to discover what went on at that meeting through due diligence, and filed a timely pretrial motion. Thus, this allegation is not properly raised as one pursuant to newly discovered evidence.
[6] We have held there are three components that a defendant must show in order to be successful in a Brady claim: (1) the evidence must be favorable to the defendant because it is either exculpatory or because it is impeaching; (2) the evidence must have been withheld by the State, either willfully or inadvertently; and (3) prejudice to the defendant must have ensued. See State v. Riechmann, 777 So.2d 342, 362 (Fla.2000).