NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

GERARDO SANCHEZ, SR.,                )
                                     )
         Appellant,                  )
                                     )
v.                                   )          Case No. 2D17-258
                                     )
STATE OF FLORIDA,                    )
                                     )
         Appellee.                   )
_____)

Opinion filed May 3, 2019.

Appeal from the Circuit Court for Polk
County; John K. Stargel, Judge.

Howard L. Dimmig, II, Public Defender, and
Cynthia J. Dodge, Assistant Public
Defender, Bartow, for Appellant.

Ashley Moody, Attorney General,
Tallahassee, and Helene S. Parnes,
Assistant Attorney General, Tampa, for
Appellee.


VILLANTI, Judge.

        Gerardo Sanchez, Sr., appeals his convictions and sentences for one

count of burglary of a structure, one count of possession of burglary tools, one count of

unlawful use of a two-way communications device, one count of attempted burglary,

and one count of first-degree misdemeanor criminal mischief.  Because the State's

evidence was legally insufficient to sustain the convictions for unlawful use of a two-way communications device and first-degree misdemeanor criminal mischief, we reverse those convictions. We affirm the remaining convictions without further comment. And because the reversals necessitate resentencing, we remand for resentencing before a different judge.

<u>Old Polk City Road Walgreens</u>

At around 3:00 a.m. on January 14, 2015, a Polk County sheriff's deputy parked at a church next to a Walgreens drug store that faced Old Polk City Road in Lakeland. As he worked on reports in his patrol car, the deputy heard noises coming from the back of the store. Going to investigate, he peered through the trees that separated him from the store parking lot and saw two individuals using what appeared to be a yellow pole to attempt to pry open the back emergency exit door of the store. The deputy quietly radioed for additional units to respond to the area.

Almost immediately thereafter, the two individuals ran away from the door and stood next to a dumpster in the Walgreens parking lot. Moments later, a black Mustang drove into the parking lot and stopped, and the two individuals jumped in. The car then sped away onto Grady Mock Road and then turned onto Socrum Loop Road. The deputy radioed the other units with a description of the car and the direction it had gone, and then he approached the back of the store. There, he discovered pry marks with yellow paint around them on the emergency exit door. He also heard a buzzing sound that he thought came from an alarm system.

Before he could investigate further, the deputy was notified that a black Mustang with three men inside had been stopped about a mile away. When he arrived

at the traffic stop, the deputy identified the car and its occupants, one of whom was Sanchez, as being the men he had seen behind the Walgreens. The men were arrested, and the Mustang in which they had been riding was searched incident to their arrests. During that search, officers located three yellow gloves, some tools, and clothing in the main part of the trunk and a set of hand-held walkie-talkies and additional power tools inside the compartment designed to hold the spare tire. Some time later, a deputy walking the route the Mustang had taken from the store found a single yellow glove and two yellow crowbars lying in the roadway. Upon questioning, the occupants of the car denied any involvement with any activities at the store.

While the police investigation was in progress, Walgreens' alarm company contacted the assistant store manager and asked her to respond to the store. The assistant manager arrived and met with police on the scene. They accompanied the assistant manager into the store, and she determined that a wire to the alarm sensor on the emergency exit door had been cut. The door was damaged, but the perpetrators had not gained entry into the store.

Later on January 14, the store manager reviewed surveillance video from the day before and determined that three men matching the descriptions of the men stopped in the Mustang had been in the store shortly before 7:00 p.m. on January 13. While the surveillance cameras did not record all areas of the store, the recordings did show two of the men entering a hallway that leads to the restrooms and the emergency exit door. A Polk County sheriff's detective also viewed the surveillance video, and he testified that the men seen in the video were the same individuals in the Mustang who were arrested after the burglary.

- 3 -

Based on this investigation, the State charged Sanchez with one count of burglary, one count of possession of burglary tools, and one count of unlawful use of a two-way communications device.

Ariana Street Walgreens

At 11:00 p.m. on January 13, 2015, the store manager of the Walgreens on Ariana Street in Lakeland had trouble setting the alarm system when she was closing the store. The system indicated that a sensor on the back emergency exit door was not connecting. The manager walked to the emergency exit doors, looked at the sensor, and did not see anything wrong. She walked outside to look at the back door itself and did not observe anything out of the ordinary. She then bypassed that sensor, set the rest of the alarm system, and closed the store.

At 4:30 a.m. the next morning, the manager received a call asking her to respond to the store. When she arrived, she discovered that the back emergency exit door had been damaged by what appeared to be pry marks surrounded by yellow paint. The investigating police officer later discovered that a wire to the alarm sensor on the back emergency exit door had been cut—damage the manager had not noticed the evening before.

Later that day, the manager reviewed surveillance video from the store security cameras, which showed three men entering the store shortly after 7:30 p.m. on January 13, walking generally toward the rear of the store, and then returning to exit through the front doors. Because the number of cameras in the store was limited, there was no surveillance footage showing exactly where the men went after they entered the store. But the manager testified that the video showed the men heading in the general

direction of the restrooms, which are in the back of the store by the emergency exit door.

The manager turned the video footage over to the police detective who was investigating the incident. The police also collected both the alarm sensor and some paint chips from the emergency exit door. The manager testified that while the emergency exit door was damaged, the door had not been repaired because it was still usable. Nevertheless, upon questioning by the State about the cost to replace the door, the manager testified, "My guess would be around 1500 or 2000. It's a steel door, you know, very expensive door, very hard to get into. . . . So that would be my guess." The State offered no other evidence concerning the cost to replace and/or repair the damage to the door.

The Polk County sheriff's detective assigned to investigate the Old Polk City Road store case was also assigned to the Ariana Street store case, and he reviewed the surveillance footage from both stores. He testified that the men seen entering the Ariana Street store at approximately 7:30 p.m. on January 13 were the same men who were seen entering the Old Polk City Road store at approximately 7:00 p.m. on January 13 and who were arrested after the burglary at that store in the early morning hours of January 14.[1]

---

[1]Sanchez objected to this testimony as calling for a legal conclusion. This objection was overruled. On appeal, Sanchez argues that the trial court erred by permitting the police detective to identify the men on the video since the detective had no prior knowledge of the men. While this argument is correct, see Alvarez v. State, 147 So. 3d 537, 542 (Fla. 4th DCA 2014); Ruffin v. State, 549 So. 2d 250, 251 (Fla. 5th DCA 1989), this argument was not made in the trial court. Therefore, it is not preserved for review in this appeal. See Chamberlain v. State, 881 So. 2d 1087, 1100 (Fla. 2004) ("[T]o be preserved for appeal, 'the specific legal ground upon which a claim is based

Based on this investigation, the State charged Sanchez with one count of attempted burglary and one count of criminal mischief.

Defense Case

At trial, Sanchez testified that he was traveling with his son and another man from Orlando to Tampa in the early morning hours of January 14. He testified that they exited the highway to try to find food and got lost. He testified that he worked installing drywall and fiberglass and that the tools in the car were used for his work. He denied ever being in either the Ariana Street store or the Old Polk City Road store and denied attempting to break into either one.

At the close of the State's case, Sanchez moved for a judgment of acquittal as to the charges arising out of the Ariana Street store, specifically arguing as to the criminal mischief charge that the State had failed to offer competent evidence concerning the value of the damage to the emergency exit doors. As to the charges arising from the Old Polk City Road store, Sanchez argued that the State had failed to prove a burglary, had failed to prove that the tools found in the Mustang constituted burglary tools, and had failed to prove that the walkie-talkies found in the trunk were used in the commission of any offense. Despite these arguments, the trial court denied Sanchez's motions for judgment of acquittal, and the jury found Sanchez guilty as charged on all counts.

In this appeal, Sanchez does not challenge his convictions for burglary and possession of burglary tools arising from the events at the Old Polk City Road

---

must be raised at trial and a claim different than that will not be heard on appeal.' " (quoting Spann v. State, 857 So. 2d 845, 852 (Fla. 2003))).

store.  However, he has challenged the sufficiency of the evidence to support the remainder of the convictions.  We reject his argument that the evidence was insufficient to sustain his conviction for attempted burglary of the Ariana Street store.  See McDuffie v. State, 970 So. 2d 312, 330 (Fla. 2007) ("The [S]tate is not required to rebut conclusively every possible variation of events which could be inferred from the evidence, but only to introduce competent evidence which is inconsistent with the defendant's theory of events.  Once that threshold burden is met, it becomes the jury's duty to determine whether the evidence is sufficient to exclude every reasonable hypothesis of innocence beyond a reasonable doubt." (quoting Orme v. State, 677 So. 2d 258, 262 (Fla. 1996))).  However, we reverse Sanchez's remaining two convictions and remand for resentencing.

I.      Unlawful Use of a Two-Way Communications Device

First, Sanchez contends that the trial court erred by denying his motion for judgment of acquittal on the charge of unlawful use of a two-way communications device because the State presented no evidence that the walkie-talkies found in the Mustang's trunk were used in any way in the commission of any offense.  Sanchez is correct.

> Section 934.215, Florida Statutes (2015), provides:
>
> Any person who uses a two-way communications device, including, but not limited to, a portable two-way wireless communications device, to facilitate or further the commission of any felony offense commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

As is clear from the statutory language, the offense has two elements: "(1) the use of a two-way communications device (2) for the purpose of facilitating or furthering the

commission of any felony offense." Holt v. State, 173 So. 3d 1079, 1082 (Fla. 5th DCA 2015) (quoting Exantus v. State, 198 So. 3d 1, 2 (Fla. 2d DCA 2014)). Critical to this offense is that the statute criminalizes the use of the communications device to further or facilitate a felony, not simply the mere possession of such a device during the commission of a felony. Therefore, the State must offer some evidence that the communications device was used in furtherance of the commission of the felony at issue.

Here, the State presented evidence that a set of walkie-talkies was found in the spare tire compartment of the Mustang after the Old Polk City Road store burglary. But the State presented no evidence to establish that either Sanchez or any of his codefendants used the walkie-talkies to commit or facilitate the burglary of that store. No one was seen with them or heard using them or talking on them. Moreover, the State offered no explanation for how the walkie-talkies could have been stowed in the spare tire compartment in the less-than-five minutes between the time the initial deputy saw the perpetrators get in the Mustang and when the Mustang was stopped. Hence, the State's evidence was legally insufficient to prove that either Sanchez or his codefendants used the walkie-talkies in furtherance of the burglary, and the trial court should have granted the motion for judgment of acquittal on this count.

In this appeal, the State argues that the jury could infer that the walkie-talkies were used to facilitate the offense because the Mustang "appeared" at the scene without anyone making a call on a cell phone. But a conviction on this basis would require an impermissible stacking of inferences. "An impermissible pyramiding of inferences occurs where at least two inferences in regard to the existence of a criminal

act must be drawn from the evidence and then stacked to prove the crime charged; in that scenario, it is said that the evidence lacks the conclusive nature to support a conviction." Graham v. State, 748 So. 2d 1071, 1072 (Fla. 4th DCA 1999) (citing I.F.T. v. State, 629 So. 2d 179 (Fla. 2d DCA 1993)).

Here, to prove the charged offense, the jury would have to infer (1) that the walkie-talkies were actually used by Sanchez or one of his codefendants rather than being simply stowed in the car, (2) that Sanchez or one of his codefendants used the walkie-talkies to communicate with the driver of the Mustang, and (3) that the communication concerned picking up the perpetrators from the scene to escape the police. Because these inferences must be stacked to prove the offense of unlawful use of a two-way communications device, the State's evidence was legally insufficient. Therefore, we must reverse Sanchez's conviction for this offense.

II.     Criminal Mischief

Next, Sanchez contends that the trial court should have granted his motion for judgment of acquittal on the charge of first-degree misdemeanor criminal mischief arising out of the damage to the emergency exit door of the Ariana Street store. While there is sufficient evidence to prove that Sanchez committed the offense itself, the trial court erred by not granting the motion for judgment of acquittal as to the degree of the offense because the State's evidence was insufficient to prove the amount of the damage. Therefore, we reverse the conviction for first-degree misdemeanor criminal mischief and remand for entry of a conviction for second-degree misdemeanor criminal mischief.

The applicable statute provides:

(a) A person commits the offense of criminal mischief if he or she willfully and maliciously injures or damages by any means any real or personal property belonging to another, including, but not limited to, the placement of graffiti thereon or other acts of vandalism thereto.

(b)1. If the damage to such property is $200 or less, it is a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.

2. If the damage to such property is greater than $200 but less than $1,000, it is a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.

3. If the damage is $1,000 or greater, or if there is interruption or impairment of a business operation or public communication, transportation, supply of water, gas or power, or other public service which costs $1,000 or more in labor and supplies to restore, it is a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

§ 806.13(1), Fla. Stat. (2015). As can be seen from this language,

a plain reading of the criminal mischief statute reveals that the amount of damage is an essential element of the crime of <u>felony</u> criminal mischief. The <u>only</u> difference between second-degree misdemeanor mischief and third-degree felony mischief is the value of the damaged property. Felony criminal mischief requires proof of the amount of damage, whereas second-degree misdemeanor mischief does not. Absent proof of the amount of damage, an act of criminal mischief, as defined by the criminal mischief statute, is a <u>misdemeanor</u> of the second degree. The value of damage, therefore, is clearly an essential element of <u>felony</u> criminal mischief.

<u>Marrero v. State</u>, 71 So. 3d 881, 887 (Fla. 2011). Further, the <u>Marrero</u> court held that the jury's "life experience" concerning how much certain repairs might cost could not substitute for actual evidence of the value of the damage. <u>Id.</u> at 890. This court has since held that the same reasoning applies to the difference between first-degree

misdemeanor criminal mischief and second-degree misdemeanor criminal mischief. See Perez v. State, 162 So. 3d 1139, 1140 (Fla. 2d DCA 2015).

Here, the State charged Sanchez with first-degree misdemeanor criminal mischief under section 806.13(1)(b)(2); and it presented the testimony of the store manager in support of the amount of damage. However, the store manager's testimony was limited to her "guess" that replacement of the door would be between $1500 and $2000, and she also testified that the door had not been replaced because it was usable and worked fine in its slightly damaged condition. Neither the store manager nor any other State witness testified to the diminished value of the door or a cost of repair.

The manager's "guess" concerning the cost to replace a door that will not be replaced does not constitute competent evidence of the value of the damage to the door. Her testimony is not based on the actual cost to replace the door but instead is based solely on some type of "life experience" that she may have. In the absence of any evidence of the actual cost to repair the damage to the door, the trial court should have granted Sanchez's motion for judgment of acquittal as to the charge of first-degree misdemeanor criminal mischief and should have entered a conviction for only second-degree misdemeanor criminal mischief. Therefore, we reverse the conviction for the first-degree misdemeanor and remand for entry of a conviction on the lesser offense of second-degree misdemeanor criminal mischief. See § 924.34, Fla. Stat. (2015) ("When the appellate court determines that the evidence does not prove the offense for which the defendant was found guilty but does establish guilt of a lesser statutory degree of the offense or a lesser offense necessarily included in the offense charged, the

- 11 -

appellate court shall reverse the judgment and direct the trial court to enter judgment for the lesser degree of the offense or for the lesser included offense.").

III.     Proceedings on Remand

Finally, Sanchez contends that he is entitled to be resentenced by a different judge on remand because the judge who imposed his original sentence considered improper factors when doing so.  This argument also has merit.

"A trial court violates due process by using a protestation of innocence against a defendant."  Bracero v. State, 10 So. 3d 664, 665 (Fla. 2d DCA 2009); see also Hannum v. State, 13 So. 3d 132, 135-36 (Fla. 2d DCA 2009).  In addition, the court cannot consider a defendant's truthfulness at trial when imposing sentence.  Hannum, 13 So. 3d at 136.  When a trial court does so, it violates a defendant's due process rights, which constitutes fundamental error.  Id.

Here, the sentencing judge told Sanchez that his trial testimony "was among the least credible explanations of something that I have heard in a very long time" and that the judge believed that the offenses were part of a "calculated decision on your and your colleague's [sic] part."  Consideration of Sanchez's truthfulness at trial and his continued assertions of innocence was improper.  Given that Sanchez had no prior felony convictions and scored a nonstate-prison sanction but was sentenced to five years in prison followed by five years' probation, we cannot say that these improper considerations did not contribute to the judge's sentencing decision.  Therefore, on remand, Sanchez must be resentenced by a different judge.

IV.     Conclusion

In sum, we affirm Sanchez's convictions for burglary of a structure, possession of burglary tools, and attempted burglary.  We reverse his convictions for unlawful use of a two-way communications device and first-degree misdemeanor criminal mischief.  On remand, the trial court should enter a judgment of acquittal on the charge of unlawful use of a two-way communications device and a judgment for the lesser offense of second-degree misdemeanor criminal mischief.  Following that, Sanchez is entitled to be resentenced by a different judge using a corrected scoresheet.

Affirmed in part, reversed in part, and remanded for further proceedings.

SILBERMAN and ROTHSTEIN-YOUAKIM, JJ., Concur.